. I concur with the majority of the court on the general law and its application upon the point of M’Gowen’e power to purchase; but disagree with respect to the declaration of trust. Frazer and Wyche, whose testimony lias not been impeached, swear positively, that shortly after the purchase, M’Gowen told them he had purchased the ferry tract, for Compty’s children. This I think a sufficient declaration of trust, and vests the estate in them absolutely.
Í am therefore of opinion, that the decree, so far as relates to the ferry tract, should be reversed. In other respects it ought to be affirmed.
W. TiiompsoW
In this case several points have been disposed of by my brethren, which meet my concurrence.
But there remains one, in which unfortunately I differ from them in opinion. This is, with respect to the legality of the purchase of the ferry tract made by the defendant M’Gowen. The price paid for the land was said to be a good one a£ the time of the sale; but the ferry has since improved-greatly in value, and is likely to keep pare with the growth of Columbia. The defendant was entitled to one third of the tract, in right of his wife, who was the widow1 of Compty, when he married her. The children were minors, and he applied to the Court of Common Pleas for a partition. To obtain a division of the estate was no doubt for his interest, but in seeking this, he was also tyoqgdto at toad to that of the children.- *501 He was administrator of the estate, arid was appointed by the court guardian ad litem of the minors, and in this Rouble capacity, he must be considered by this court as a trustee j and though perhaps not a trustee to sell, yet the sale was made by his procurement, and he acted for the children. He purchased the land at public sale, and there was no unfairness ; but this will not affect the principle which applies almost universally. The rule is, not to permit a trustee to purchase a trust estate, while the connection between him and the cestui que trust continues ; because by the situation in which he is placed, he has opportunities of discovering advantages in the property which might have escaped the rest of mankind. Now the situation of this defendant was particularly opportune to discover the value of this property, for he alone knew the custom of the ferry, and its increase $ and he alone was in the habit of receiving monies for ferriage, which being in small sums, and easily disposed of* might easily have been secreted from the knowledge of the rest of mankind. But he had many other advantages over the minors besides a knowledge of the true value of the property. In his own right, and by representing them, he had the sole power of nominating four of the coinmis-. sioners who recommended the sale. I knpw not who they were; they were no doubt good men, but I speak abstractly upon a general question. As the court is not generally acquainted with persons in the vicinage, he might perhaps influence the choice of the fifth commissioner. This is by no means unusual, and thus he might, have the whole of them his particular Mends. Then a sale of the ferry tract was recommended by the commissioners, and was made. The defendant was entitled to retain one third of the purchase money, and to have credit for it; and therefore he could buy upon easier terms than any other person. He might give out privately that he was about to purchase for the minors, and thus stop the mouths of many, who otherwise would have become bidders. In short, this case is surrounded with dangers to the children. He was in loco parentis, his wife. *502 was the step mother, and they had no others to look to for protection, and though there was no fraud, yet, it is the danger of fraud in similar cases that I am seeking to avoid. During the whole transaction, the minors are ' ,. ,. . , _ at the mercy or the guardian — their whole property ism his hands, they are not free to act, they are under his authority — they are bound to obedience; and it is not until they come of age, or claim the protection of this court, that they can call upon him to do justice* See Sugden’s law of vendors, from p. 393 to 398. Also New-3and on Contracts, 459 to 466. This case is very similar in principle to that of the assignee of a bankrupt, who purchases the bankrupt’s estate; upon which the case' ex parte Reynolds was cited by the counsel from 5 Yez. jr. 707'. Such cases also abound in the subsequent vols. of that work. In the principal case, the sale was made by authority of the court; so in a case of bankruptcy, the assignees have no power but what is derived originally , from the lord Chancellor. The assignee is a trustee for the creditors, and has an opportunity to deal for his bene.-fit, more amply afforded, and more out of the reach of investigation •, and he has the bankrupt at his mercy. Thus likowiseinthe present case, the administrator is a trustee for creditors, and has the minors at his mercy. And yet it is laid down, “ that without reference to the circumstance of advantage gained or unfairness practised, and whether the sale be by private contract, or by auction, that an assignee under a commission of bankruptcy, as he is a trustee for the benefit of creditors, and of the bankrupt, cannot purchase the bankrupt’s estate j and is more particularly within the general principle.” Newland on Contracts, 462, 3. But as I have compared the present case of an administrator, to that of an- assignee, to give it support, so in other cases the assignee is assimilated to an executor for the same purpose. Ex parte Lacy, 6 Yez. jr. 625, ex parte James, 8 Yez. 337. But further, there is a rule laid down by lord Hardwicke, which I think very strong upon this point. That where a trustee for •persons, not sui juris, becomes hot!) buyer and seller, the *503 court will, under no circumstances whatever, he they lie--ver so fair between the parties, establish a purchase of that kind, unless the transaction is legitimated by an act of the court, or some public act. Sug. 393, 4. Now the defendant in this case was virtually the seller, for the sale was made by his procurement; and the purchase made by him, while guardian for others not sui juris, has not been legitimated by any court; nor can it be, by the public manner in which the sale was made, for “ the publickness of a sale ought not to sustain a purchase, which cannot otherwise be supported10 Vez. jr. 394. But finally, it is laid down by high authority, “ that this general rule stands much more upon general principle, than upon thé particular circumstances of any individual case. The purchase is not permitted in any case, however honest the circumstances; the general interests of justice requiting it to be destroyed in every instance, as no court is equal to the examination and ascertainment of the truth, in much the greater number of cases 8 Vez. jr« per lord Eldon. This authority appears to m'e to be con-elusive. It is certainly more safe to require the trustee to divest himself of his character as such, by order of the Court in which he applies for leave to sell, before he should he permitted to purchase y and by this means to prevent all the consequences of his acting both for himself and the cestui que trust. But there are other reasons for opening the sale of this property. Defendant said ia the presence of .certain witnesses, that he had purchased for the children, and he rendered no account of the purchase, to the ordinary, for three years after the sale. He ought therefore to he bound by his declarations, and ought not to be allowed such a length of time to speculate about the purchase.
Upon the whole, Í am decidedly of opinion that tins decree of the Circuit Court, upon this point, should be reversed, that a re-sale of thelands should be ordered; that they should be set up at the price at which they were bought by the defendant; but that he should be held to Ms purchase if a better price cannot be obtained.
W, D, James.
Starke, Clifton and W. F. Desaussure for tbe com?--, plainant.
Chappell, Hooker and Harper for the defendants,
The much contested question, whether trustees, agents, guardians, executors, or others in confidential situations, can legally be» come purchasers for their own benefit, in any and what cases, cante again before the Court of Equity in the case of Perry and w.fe, vs Samuel Dixon, executor of J. Dixon, deceased; and it is deemed adv is cable to report that case in a note at this place, in order to put the profession in possession of all that has been yet done oh this important Subject in the Court of Equity.